May it please the court, I am Robert John of Kramer & Associates Superior on behalf of the appellants Agnes Purdy and Anne Purdy. I'd like to reserve five minutes for rebuttal. Seven years ago, the state attempted to take the Purdy's property for free via RS-2477. On appeal, this court said the state could not do that. When the case was remanded to the district court, the state filed a complaint seeking not one, but several routes across the Purdy's property, claiming that they were necessary to access other public lands. One of these routes benefits apparently no one but a gold miner, Michael Busby, who was paying to Agnes Purdy $10,000 a year in income as an access route, as a right to access his property over hers. That was extinguished by the state's taking. So Mr. Busby is getting basically free access when Ms. Purdy was previously getting revenue. One of the issues here is that there are alternative trails. In particular, there's the Lillywig Trail. Excerpt of Record 286 has a very nice diagram that shows all these trails. One of the state's witnesses, Rockford Weber, said the Lillywig is a very good trail. It was better than the state's proposed trail. It stayed drier during the rainy season and the state had already spent considerable amount of funds to improve that trail. Yes. Before we go further, I just wanted to ask you a procedural question. The parties have both agreed that Ms. Agnes Purdy is deceased? Yes, Your Honor. So has there been a substitution of party for her in terms of these proceedings? Not that I am aware of, Your Honor. So how are we supposed to go forward with the claims from a party who is now deceased? I believe that the court can do that at this time, Your Honor, and then and certainly Agnes Purdy's claims are before the court and the issues are essentially the same. Right. One we have a rule, Rule 43, that says when there is a suggestion of death on the record, there has to be someone who steps in and substitutes in for the deceased party. We can't, under our rules, we cannot make rulings on behalf of a party who is no longer alive. So we would have to dismiss those claims, wouldn't we, unless someone steps in to represent her interests. Well, I believe, Your Honor, at this point in time, given the way things have proceeded, that the court should allow some reasonable period of time for there to be a substitution before the court renders its ruling so as to not waste the resources of the litigants in the court as well, especially since the claims are essentially overlap a lot between Agnes Purdy and Anne Purdy. And the PLMAs would proceed forward, certainly as Anne Purdy anyway, and it would be a complete waste of resources to to require Agnes Purdy to start over or to redo this again in a separate separate proceeding, Your Honor. We would request, if the court believes that we need to have a some reasonable time for that to occur. But as to the Lillywig trail, Your Honor, that really is a much better trail. The state has been using it, and the real question here is, why is the state then taking the Purdy's property? And the answer is really found in the ongoing litigation between the federal government and the state government and the district court in this case. And what we have there is a sovereign tug-of-war trying to establish access under RS-477 to lands within the National Wild and Scenic River Corridor, and the Purdy's property is kind of right in the middle there. So in that regard, this case is really premature in the sense that we don't know the result of the federal litigation yet. If the federal government proves or the state doesn't prove the existence of an RS-2477, then all we have is the state taking the Purdy's property with no land around it that the state has legitimate access to. So I believe in that regard, this case should be dismissed because it was premature for the state to engage in eminent domain and less than until it first establishes its rights against the federal government and the property adjoining the Purdy's. Counsel, are you asserting that the state did not have legal authority to institute the condemnation proceedings? The state has authority to institute the proceedings, but it doesn't meet the requirements of under Alaska law for balancing public interest and against the least private harm because there is really no showing of a public interest here unless and until such time as the state actually establishes that it has a right to land surrounding Purdy's. Did you make that argument to the district court? Well, we discussed that issue, Your Honor. I don't know if we specifically phrased it as an argument, but we clearly pointed out and made the contention that the federal government by obtaining the Purdy's property. Did the district court address that issue? I do not believe that it actually addressed it in its opinion, Your Honor, but we did point that out and we've pointed out in our appellate briefs as well that this is one of the serious considerations here that the Purdy's are caught in this sovereign struggle and they should not be part of that struggle. That struggle needs to end and then this case can maybe be resumed and then there would be better issues. Certainly if the state does not own land on either side of the Purdy's for the state to say we want to take your property to access public land. Can I ask you just a few questions about these routes? Yes. So as I understand it, what the state wants to do is to connect to some pathways or routes that are north of the Purdy's property. Yes. North end of the Purdy's property. Right. So there's a trail that goes from the southern end, I gather. Was it Taylor Highway? Is it Taylor Highway down by Chicken? Yeah, yes. And then there's... Okay. As I understood from reading the district court, the proceedings in the district court, the state said, well, we want to link these two areas and the most direct way is to utilize the existing pathways that have been utilized before. And so initially they had a number of routes proposed, but I guess on remand from our uh, routes, and they ended up with the two that we have. Purdy's come back with some alternate areas. And one is the one you just referred to. What was it called? The Chili... Lilliewood. Yes. Lilliewood. That one. When the state responded to those, they argued or they pointed out that that's would significantly increase the distance that one would have to travel to get to the northern trails. Right? It may be a longer distance, Your Honor, but it is a better trail and it's already there. Well, and they also talked about how they would have to do construction on part of that trail. Is that correct? And there may be some construction that needs to be done on that, I don't have that in front of me right now to say if that's correct or not. Well, that's what I read. I mean, correct me if I'm wrong. I said I read, I thought I read in the in the district court proceedings. There may be some construction, Your Honor, but even if there is some construction, that's something that can be done. That's balancing public expenditure versus private harm and those matters. Well, so you question at the get-go whether or not they even, there's even a public necessity for taking these routes from the Purdy's? We believe there isn't, Your Honor, because there are alternate routes to come in and there is no need to take the Purdy's property. If it turns out the state does not have a right-of-way under RS-2477 over the adjoining property, then they've taken the Purdy's property in isolation. And we don't know that answer yet, and we won't know that. But why can't the state decide, look, we would like for the public good or for public access to get to those northern trails. We think this is the most efficient, if ever cases, you know, least, it's the most doable route to take. Well, it's our position, Your Honor, that the state did not consider the alternatives. They did not consider the harm to the Purdy's and the various interests the Purdy's have from having occupied that land for well over a century, and those were not taken into account. The Purdy's had a right to exclude any trespassers from the property and maintain their privacy and maintain everything else that they wanted to have as part of their traditional and cultural use of their property. So there was some discussion in the district court about these pathways or these trails, that there was an existing right-of-way before the Purdy's actually got the allotments. Is that right? I do not believe so, Your Honor, that there was an existing right-of-way that the Purdy's had to cross the Purdy's property, and it certainly was not a right-of-way that was impinging upon the property as these proposed condemnations are. Well, before the allotments went through, who was using those routes? The Purdy's had the land and there were people trying to cross that land, but the Purdy's own the property and they have a right to exclude people. Had these trails been utilized before the allotments went through to the Purdy's? There had been use on the trails, but prior, that use post-dated the Purdy's entry into the land. But it also predated their entry into the land, because there's statements in the record that these were existing trails, well-developed, and there would be little, there would be some need to do work on them, but they were Purdy accessible. But to the extent, Your Honor, that those trails existed, those could not be deemed trails under RS-2477 for the reasons this court said. Right, I understand that, but I'm just talking about the condition. Well, that, this is low-lying land, Your Honor. These trails were not the trails of the caliber of the Lily Reek Trail. That is the you have these trails, and people try and go through them. When it's low lands and it's wet, they just create divots and ditches and they make a big mess down there. And it's not a very, it's not good for the Purdy's and their remaining property to have this down there. It's not, and it's cutting right through in several directions. And so it's kind of bisecting their property or trisecting it, depending how you want to look at it. So it diminishes in part that their remainder property, the state did not consider, well, even if we have these trails, how is this, these trails right now, as they're going to be developed by the state, going to affect the remainder of the property, the use of the people who continue to live there, the Purdy's and their heirs and the signs. So we believe that's one of the issues that wasn't considered as well, is that these alternative routes. And the real problem is in part, as we said, this was decided by the district court on a summary judgment posture. And in fact, these issues should have been subjected to an evidentiary hearing or some type of proceeding where the judge could hear the testimony of the various parties, weigh the credibility, and make a decision resolving any factual disputes and questions about credibility. I'd like to address briefly our just compensation arguments, Your Honor, and the issues relating to Alaska Rule 72. The just compensation problem here is the state submitted an appraisal from its appraiser. The appraiser, among other things, totally ignored the fact that the Purdy's, that Agnes Purdy was getting $10,000 a year in revenue on her property. If one were to use the income capitalization method, assume a 10% capitalization rate, that $10,000 comes out to $100,000 fair market value for the property. Now, the appraiser himself discounted it, but that doesn't mean that a jury wouldn't say, okay, we're going to give you just compensation based upon this factor as well as other factors. And the state's appraiser, despite testimony from Ms. Redmond and the like about the impact of the property on the property, awarded no severance damages, and that's clearly erroneous. Now, the procedural matter that's caused part of this problem is the parties and the court were proceeding under Alaska Civil Rule 72, which allowed for a master's hearing, so that these matters could be explored first in the master's hearing. But Judge Beislein didn't grant that rule, and the Purdy's were thinking they were entitled to a master's hearing. So all of a sudden, they're proceeding on summary judgment as though we're going to get a master's hearing, but we don't. So now, on appeal, the state is shifting grounds and saying, oh, we were going under the wrong rule. It's really Federal Rule 71.1. Regardless of which rule it is, we're entitled to a remand on that issue, either to have a master's hearing and further proceedings under Rule 72, or to basically redo the summary judgment under Civil Rule 71.1, with the Purdy's now understanding that that's the rule we're going under, because the state's really stopped from changing gears on appeal and saying a different rule applies when everyone was going under the Alaska Rule, and it's only fair as a matter of due process that the Purdy's be allowed to present evidence in the context of a summary judgment motion under the Federal Rule, if that is the rule, though it is our position that the proper rule is Alaska Rule 72.2. I'd like to hear from the state. Hi, my name is Jessie Alloway, and I represent the State of Alaska Departments of Natural Resources in Transportation and Public Facilities. I'll start off by addressing some of the court's factual questions. So we're talking about a pretty remote part of Alaska. Chicken is located on the Taylor Highway. It's about 60 miles in. The Taylor Highway is only open in the summers. Once you leave Chicken, you would travel north on what is called the Chicken Ridge Alternate Trail to get to the Purdy Allotments, and then you go through the Purdy Allotments. Basically, if you look at the maps, it's like a Y. The Chicken Ridge Alternate Trail is the stem of the Y, and then you have the Chicken Ridge Trail and the Myers Fork Trail. So when the state took on the, well, at the beginning of this litigation, the court is positioned that there are what is known to be RS-2477 highways located across the Purdy Allotments. RS-2477 is an old federal statute. It was an open federal grant that allowed the public to accept rights of way over public land. It could be done in a couple of ways, public use or official state action. This land began to be used in the early 20th century at the start of the gold rush. So prior to the Purdy's entering their native allotments, these lands were being used by miners to access their mining claims. This started in 1886 at the start of the gold rush and continued to present day. The problem with the state's RS-2477 claim isn't that it was trying to take the Purdy's land without compensation. It was that the court didn't have subject matter jurisdiction over the litigation. So there's no way for the state to clear the title to the RS-2477s. That doesn't mean they don't exist. As Mr. Redford testified in his affidavit, these are well-established trails that have been used for a long period of time by the public, and they're still used today, as the Purdy's discussed in their opening brief. They call it trespass. The state would call it lawful public access because there are RS-2477s on their land. But after the court issued the decision in the first appeal where it said it didn't have subject matter jurisdiction, the state was faced with the decision, do we allow the public to continue to use these routes, which they've always used, and face possible trespass actions by the Purdy's, or do we find a way to clarify the issue and provide lawful public access? And that's why the state decided to go forward with its condemnation proceedings. Because the state has confirmed title to Chicken Ridge Alternate Trail as it enters the southern part of the Purdy allotment. That is state land, and there are existing trails to the north of the Purdy allotment. So via this condemnation, the state was essentially trying to connect already existing routes that enter and exit the Purdy allotment on the south and the north. So that was the purpose of the condemnation. It is not dependent on success or failure with the state's remaining part of the north of the Purdy allotment, but whether or not the state succeeds in its claims against the federal government doesn't mean that there's not a public necessity for the trails that are existing on the Purdy allotment today and that are at issue in this condemnation proceeding. The Lilywick Trail is the trail, one of the alternatives that was suggested by the Purdy's, and it's further, it's outside of Chicken. The problem with the Lilywick Trail is what Judge Pius recognized. There's two problems with it. First, it doesn't provide the direct access. It doesn't connect the two routes that are already existing. It adds about 10 miles on to the journey to get to the Chicken Ridge Trail. And I have to be mindful, this is Alaska, so we're not talking about typical highways. These are ATV routes, and so another 10 miles to get to Chicken Ridge or to the north of the Purdy allotments is actually more onerous than if you're just going to get in your car and drive on the highway. So this does matter. The other part of the Lilywick Trail that causes an issue is that it's not all controlled by the state. The state did construct basically a highway to allow people to access the Lilywick, but the first part of the Lilywick Trail is actually owned by the United States. It goes through a wild and scenic corridor, so it's owned by the United States and managed by BLM. So it doesn't serve the state's public interest of having a right-of-way that provides the public with access to these trails that are completely controlled by the state of Alaska. So the state and our employee, Mr. Wedberg, did consider the Lilywick Trail, but the state made a decision that it didn't meet the public's interest, so we continued with the condemnation across the Purdy allotments. One of the other alternatives that the Purdy's suggested did require construction. That wasn't necessarily the Lilywick Trail. The Purdy's suggested a trail located, Chicken Creek runs to the east of the Purdy allotment, and there's some RS-2477s that run along Chicken Creek, and the Purdy suggested that you could cut across on one of those trails, but that's the trail that would require construction. And DNR employee, Mr. Wedberg, went out, investigated that trail. It would require construction. The other problem is that it would go over a bluff, which is dangerous. And then the third problem was that it actually brought the public directly to the Purdy grave sites. So under both Rule 71 of the federal rules and Alaska Rule 72, the Purdy's had an obligation in their answer to the complaint to raise any objections to the taking, and the only objection that they raised was that these routes would bring the public to their grave sites, and the state did investigate that. The route proposed by the Purdy's did just that. The public would end up at the grave sites. I think that's at least 300 feet away from the grave sites. So to the extent the Purdy's brought concerns to the attention of the state, the state employees did consider them and made a determination that these trails would provide the greatest public benefit and that they would, they connected already existing routes. They didn't require any construction. There was no environmental harm to the Purdy allotments. These particular portions of the route are in fact drivable by highway vehicles, which is best, they're in better condition than most of those trails in that area. And taking that would cause the least harm to the Purdy's because it stayed away from the grave site and wouldn't cause any additional environmental harm to the Purdy's. So that was the basis of the state's decision. And then the procedural posture in which we got there I think matters somewhat. I don't think that there's a problem with what rules either party applied. So when the court was, when the district court was analyzing both the state's motion to determine necessity as well as the motion for just compensation, Judge Beislein applied Alaska's substantive law and followed the Alaska rules of civil procedure. I believe he was absolutely correct in applying Alaska's substantive law. We proceeded under section 357 to contend the native allotments that requires that you apply the state law in which the land is located. So no problem, both parties are on the same page as far as that's concerned. There's no issue there, but there was an issue. The state's, both parties should have proceeded under the federal rules of procedures. But neither party recognized this in the district. It wasn't brought to the district court's attention. The only reason that I brought it up in my briefing was because one, I thought the court would notice it and I wanted to address any questions that you might have about why the parties did what they did up front. And two, I wanted to address the Purdy's suggestion that any issue of first impression must be certified to the Alaska Supreme Court. They never made that was never something Judge Beislein considered. And if you look at the rule that the state proceeded under for the motion to determine authority and necessity, which was Alaska rule 72H2C, it doesn't specify whether the land order is, doesn't specify whether the land order is entitled to an evidentiary hearing. It doesn't state whether they get an evidentiary hearing or not. And it doesn't state anything regarding if an evidentiary hearing is allowed, what procedures you would follow to get to that, whether you have to show a genuine issue of material fact or not. And that is not something that the Alaska Supreme Court has yet to address, at least as far as, as I know. But I don't think that it's an issue that the court has to certify or should ever consider certifying. And the reason for that is if you look at rule 72A2A, which is the proceedings for quick takes, that rule actually does specify, it says, and the land owner, once they object, once they object, they are entitled to an evidentiary hearing if there are genuine issues of material facts. So if the Alaska Supreme Court was ever presented with the question of what procedure would apply in a slow take proceeding such as this, I think that it is reasonable to conclude that the Alaska Supreme Court would say the same thing applies to slow take proceedings, that they're not going to have the district court hold an evidentiary hearing unless there's a reason to hold an evidentiary hearing, unless there's genuine issues of material facts. And in all reality, the parties to this case proceeded like the rule 72 motion was a motion for summary judgment. The parties argues that there were genuine issues of material fact. Judge Beislein said, no, they were not, that the state's evidence was unrefuted, and therefore ruled as a matter of law that the state had shown that there was necessity and authority for the taking. So no matter what the little wrinkle in what rules we should have applied, I don't think there was any harm to it. And I think essentially, even though we cited rule 72, we were also just following the rules of civil procedure in that the procedural mechanism for bringing this to the court at that particular stage was a motion for summary judgment. So let me ask you just a few questions that I have in thinking about this case. So one of the arguments they make is that there was no, they proposed these alternative trails, the little wig and the other one you were just discussing, I forget the name of it, and then the one that would cut across the northern part of the property. And they argued that there was an inadequate consideration of those trails. And in fact, there was no quantitative, you know, cost analysis of what it would take to utilize those and balancing that against impinging upon the private property of the Purdy's. What's your response to that? My response to that is that it's not accurate. Mr. Weber, in his deposition, or it's not his affidavit, he was the DNR employee that investigated the trails. And he went to the Purdy allotment in 2012. He investigated the Lillywood trail, the alternate northern trail, which the Purdy's refer to in their briefing. And then I don't think we named it, but I'll call it the Chicken Creek trail. And he determined that none of those trails would meet the public interest in connecting the routes that already exist to the north and the south. And we articulated reasons why, Your Honor. And I've already expressed those. The Lillywood trail doesn't meet the public's interest because it adds 10 miles to the route. And it goes through a wild and scenic corridor, which the state doesn't own. We can't condemn land. We can't condemn the federal government's land. So there's no way for us to get that route clear and free. The Chicken Creek trail requires construction and points us directly to the Purdy family burial site. And then the northern trail wasn't the most direct and the safest route, according to Mr. Weber's testimony. And the Purdy's, although they suggest that they want to question Mr. Weber on that, they offered no competent admissible evidence to undermine the state employee's testimony or determination. And in these contexts, I think in condemnation proceedings, the court would apply Alaska substantive law, which includes the burden of proof. And the state has to make a prima facie showing that the property was reasonably necessary to the public purpose. I believe that Mr. Weber's testimony does that. And then once the state makes that showing, the property owner has to provide by clear and convincing evidence that the state's a matter of caprice, fraud, or that it was arbitrary. And the Purdy's offered no admissible evidence to do that. And unlike some of the other cases that they reply, or that they mentioned to the court, which would be the Homer Heliport case, where the Alaska Supreme Court said that the state's determination on necessity was arbitrary. In that case, there was evidence. The court did say there was evidence, clear and convincing evidence, that the state acted arbitrarily because the state employees that were responsible for designing that project admitted that they did not consider the taking on that, how the taking would affect the property owner's use of the Heliport. So the state's witnesses admitted that they would, they never considered that. Here, we have a state witness that testified under oath. I investigated this area. We considered the Purdy's proposed alternatives, and it does not meet the state's needs. In that case, there's no basis for the court to find that the state's decision on necessity was arbitrary. My next question deals with the just compensation issue. And that is this. One of the arguments is, is that there wasn't enough consideration given by the appraiser, the expert who testified as to value, of the effects of the taking on the remaining property, as counsel alluded to in his argument. What in the record demonstrates that the expert did make take those matters into consideration? Well, if you look, so first of all, I would point the court to Alaska Supreme Court precedent. It's in four separate parcels of land versus city of Kodiak. And some of the other cases that the state cited. When, as far as just compensation is concerned, generally, neither party bears a burden of proof in any sense, because the court has to find... I understand that. I understand that. Right. But, but when we're talking about damages, or the loss of income, there is the burden of proof. And the Alaska Supreme Court has to show damages to their property, or the loss of income by a reasonable certainty, by a preponderance of evidence. So to the extent that there was going to be some damage to the party allotment, because of the taking, the parties did have an obligation to put forth confident evidence to show that by a preponderance of the evidence. But having said that, to circle back to your question, the appraiser did consider any, what the state believed would be known damages to the party allotment. So one of the suggestions that the parties were making was, if you condemn these routes, you're going to have a lot more ATVs on the party allotment, it's going to cause dust, and whatnot. They had no evidence on how to value that, but that was the suggestion. And if you look at the appraiser's appraisal report, he does consider it. He says that he's not providing any value, or he's not factoring that into the appraisal, because that's a pre-existing condition. Like we've already discussed, the state's position is there are already valid RS-2477s on the party allotment, and the public is already using them. There are already people driving ATVs on the party allotment to access hunting grounds, to fish north of the property, to access their mining crates. So that's already happening. What the state is doing... Well yeah, but presumably now the state's getting, once the state gets control, the state's going to take care of the trails, and maintain them, and make them more accessible. Is that right? Yeah, once the state gets control over them, then they will be managed by DNR, and hopefully... It's not an unreasonable position to take, that there's going to be an increased demand, or increased use. Sure. I would agree with that, but I also would say that the parties in the litigation had an obligation to develop that theory to the extent that they want to pursue it. So to the extent that they believed that there was going to be damage to the remainder of their property, they had to do more than just say, hey state, there's going to be damage to the remainder of our property. They had to put on competent evidence. How is it going to be affected, and how do we value that? And I position, we had the discovery period. We had depositions. We had an exchange of discovery. We were getting ready for trial. The parties asked for trial. He's faced with a motion for summary judgment, and the only thing that he has before him is the state's appraisal report. The parties offer nothing on how to value their land, and then faced in that situation, given that there's really no burden of proof in this particular situation, and the burden of production is more important. The only thing he's left with is the state's appraisal report. Okay. Rosario, before you go, I wanted to ask one question, and it's just to clear. I'd like you to clear up why all three of these trails are needed. It looks like 2A forks into 2 and 3. Is that right? Right. So we're talking, I like to think, my brain works, it's like a Y. So you have the Chicken Ridge alternate trail, which enters the south, and then there is a fork, and you have the Meyer fork trail, which is on the left, which would be the west, and then the Chicken Ridge trail. So the Chicken Ridge trail continues on and goes to the north, and the Meyer's fork trail continues and gets access to some mining claims located along Meyer's fork, and the reason that you need both of those trails is that there's no connector from Chicken Ridge to Meyer's fork, and Meyer's fork provides, it's actually the best route on the Purdy's property because it's currently accessible by highway vehicles, and it provides direct access to the mining lands that are north of the Purdy property, and then the Chicken Ridge trail provides access to a separate trail system known as the Chicken Ridge trail, which you can then travel well north of the Purdy property to access additional mining claims and hunting grounds. Okay. I see I'm out of time. I didn't get to talk about attorney's fees, but unless you have questions on that, I'll rest. Okay, thank you. Council, you had some time for rebuttal? Sir, you're muted. I'm muted. Okay, may it please the court. A couple issues there. In response to Judge Wallinson's question, I was told that the Purdy's are in the process of getting a personal representative appointed, and there may or may not be one right now, but that at the minimum is in the works right now. What's the estimated time for completion of that process? I do not know off the top of my head, Your Honor, because it may happen as soon as several weeks to several months is my understanding, and it may be imminent right now. I'd have to find the exact information out right now, but I wasn't able to jump away and make a phone call. I could try and get information to the court within the next week or so and at least give the court an update on where that process is. Right now, I don't have complete information, so I don't want to tell something to the court that I don't know to be true, other than what I've told the court already, which is what I know. And one of the questions here, one question I had is the state's talking about the Lily Week Trail interfering with the Purdy's grave site. The affidavit of Barbara Redmond, Excerpt 311, talks about that the land being taken contains the Purdy's grave sites. If one looks at the map, Excerpt 286, one can see that the Lily Week Trail is well outside the Purdy's land, so I'm not quite sure what the state is saying in regard to that. I thought it was the northern kind of trail that the state was talking about. Okay, I understood the state to be talking about the Lily Week Trail. The question here on the issues about the just compensation that the court brought up is the state says, oh, we didn't present enough evidence, but this goes back to the initial problem here is proceeding under Civil Rule 72 of Alaska Procedure. The state knows that under Civil Rule 72, you start with a master's hearing, and you're entitled to that at some point before you proceed to a jury trial. Had there been this master's hearing, these issues could have been fleshed out in a more informal format, and perhaps this case would have been resolved on the just compensation question there. As it was, the Purdy's did not hire an appraiser, which they may have done for a master's hearing. They may have just cross-examined the state's appraiser at the master's hearing. When was that issue raised to the trial court? Well, we raised it to the trial court when it appeared that the trial court was going to proceed toward judgment without doing a master's hearing, so we raised that at that point in time, and the thing was... Before the motions for summary judgment? We raised that issue afterwards, Your Honor, when the court appeared to be proceeding without a master's hearing toward final judgment, and the thing is the master's hearing right under Alaska law is something that exists and can only be waived in writing by the parties, and so that was never done. We never waived our right to a master's hearing. We asserted it when it appeared that the court was not going to go back and do it. It was just going to enter judgment. We said, wait, wait, wait. You can't enter judgment yet. We were entitled to a master's hearing first, regardless of what the court's ruling is on summary judgment. Well, in your opposition... Go ahead, just tell us. No, no, go ahead. I was just going to ask, how long after the proceedings began was that request made for a master's hearing? The master's hearing request was made, Your Honor, I believe in... In what? I'm trying to think. 2018, I believe it was made. What month? I would have to go look at the record there and find that. It would be the motion for a master's hearing. And when did the proceedings begin? The proceedings began after the court's remand, I believe in 2017. So, you know, it went on for a while. But the thing is, under Alaska law, which the parties were proceeding under, the master's hearing exists as a matter of right, unless the parties agreed to waive it in writing. And the state knows that. And I was surprised that the state hadn't done that. But the thing is, everyone was proceeding under Rule 72. So at that point, we're entitled to the benefits of Rule 72. Or if not, if the court says that was a mistake by everyone, we need to go back and be entitled to respond to the summary judgment motion with the understanding that it's under Federal Rule 71.1. That's the procedural unfairness that arose. So let me ask you this. When you opposed the state's summary judgment motion, did you even allude to the master's hearing? Not that I am aware of, Your Honor. At that point in time, we were addressing that in that context. But the state filed its motions and everything under Civil Rule 72 of Alaska Rule of Civil Procedure. So at that point, the master's hearing was there. In hindsight, maybe it would have been better to have brought that up then. But that didn't mean we waived it. And we brought it up, as I said, when it appeared the court was going to proceed after the summary judgment motion. Did the district court have an oral argument on the state's motion? The state's motion for summary judgment? Yes. Yes, there was one, Your Honor. And nobody raised a master's hearing in front of the court? No. The issue may have come up with the oral argument, Your Honor. I don't know if that's part of the transcript or not. I did not do the oral argument. I was there, and I can't recall for sure if that was raised at the oral argument. But... Counsel, do you have any case that the Alaskan Supreme Court has required strict compliance with the master's hearing requirement? Doesn't the state of Alaska recognize implied waivers of procedural rights? There are implied waivers of procedural rights sometimes, Your Honor. But this is a very specific provision that does not allow for an implied waiver, because it says that the waiver must be by both parties agreed upon, and it must be in writing, and it must be filed with the court. So that, I think, prohibits an implied waiver analysis. If the court wants to certify a question to the Alaska Supreme Court, that would be one, because that's a matter of Alaska law that the state didn't really raise the implied waiver argument here, so we haven't really addressed that. But the provision is very clear and straightforward that any waiver must be in writing, and it must be by both parties. Counsel, are you familiar with the case of four separate parcels of land versus City of Kodiak? The state referred it to it just now. I didn't get a chance to read it. I may have read it previously, Your Honor. That case seems to say that the failure to appoint a master, even when it's requested, is not fatal to the condemnation process. Well, it may not be fatal to the process, Your Honor, but the problem here is it's fatal to the procedural due process, in this case, in that regard, because we were proceeding with that understanding, and it resulted in the way we responded to the summary judgment motion. So regardless of whether it's fatal in and of itself, the fact is that it needs to be waived, and when we're operating from that understanding, and the state is proceeding under Civil Rule 72, and so is the court, we're entitled to the benefit of our understanding that Civil Rule 72 applies. And even if you can forego the master's hearing, that doesn't affect our understanding that we were entitled to one, and it affected the due process, the way matters proceeded in the trial court, and that's why that's so important, because we would have proceeded differently had we known there was no master's hearing, or that we were not going to get one. So the record seems to reflect that the amended complaint was filed by the state on September 8, 2016. So your 2018 request for a master's hearing would have been more than two years after that. That would be correct, Your Honor, but the master's hearing doesn't have to be requested, it has to be waived, and it was our understanding that we were going to get a master's hearing. So when we requested it, because the court appeared to be proceeding without it, we were procedurally prejudiced by not having it in the way we responded to the summary judgment motion. So that's why we're saying, whether we were entitled to it or not, the parties and the courts' mutual understanding about, potentially mutual misunderstanding, about the way we were going to proceed, entitled us to go back and at least proceed with a common understanding and have the opportunity to respond to the summary judgment motion with the understanding we're not going to get a master's hearing, so we're going to have to do something, we're going to have to get our own appraisal now in the summary judgment context, instead of in the master's hearing context. And that is a matter of fundamental procedural fairness, Your Honor, at a minimum, I think the case needs to go back to allow for the procedural fairness of proceeding under a rule and in a way that the parties are in mutual agreement. What would you present at the master's hearing that you were unable to present before the district court? The way a master's hearing would work, Your Honor, is generally, oftentimes a former judge or an appraiser is appointed as the master, the state's appraiser goes to the master's hearing. I ask you, what evidence would you be able to present in that forum that you were unable to present to the district court? We wouldn't be but you could have done that in the proceedings before the district court. We could have, Your Honor, but the way the master's hearing works is it's intended to be a way to get a less expensive and effective resolution for the condignee. In the first place, if the condignee is satisfied with that resolution, whether you get an appraiser or not, then they're done. But if they're not satisfied, then they can start spending more if they want to go forward in a more comprehensive format. Right, but you already did that. You spent the more money, went to the district court. So that's why I was asking you the question, what evidence would you present before master that you were unable to present before the district court? And I'm surmising that the answer is none because you haven't told me anything. We would have presented, Your Honor, further evidence. We would have gotten an appraisal we would have taken the deposition of the state's appraiser. We would have done more procedural things that would have occurred naturally in the context of the master's hearing had it been done. So we would have done a lot more if we'd known that the only opportunity we had was the summary judgment motion and we were not going to have the opportunities that were We've let you go way over, but I have one last question for you. Under rules of Civil Procedure 72 under the Alaska provisions for eminent domain proceedings, Rule A says applicability of other rules. The procedure for the condonation of property under the power of eminent domain is governed by the civil rules, except as otherwise provided in this rule. Does that, if I were to study this rule completely, does it preclude the use of summary judgment? It doesn't preclude the use of summary judgment in and of itself at the appropriate time, but that would be, you know, after a master's hearing or allowing you to have the master's hearing. Summary judgment, the way the case is supposed to proceed is it's supposed to proceed first with a master's hearing or if there's some issues on summary judgment, maybe those could be in the context of a master's hearing controlling part of the case, but you aren't required to jump forward under those rules to basically pretend you're in the trial mode, that there's been a master's hearing, there's been an appeal, and now you're proceeding as with the master's hearing is wiped out and you're proceeding forward now with whatever evidence you have, you're entitled to go through that other procedure first. That's the two-step process that Alaska law, that's what we're relying upon. Okay, let me see if my colleagues have any other questions. No, thank you. Okay. Okay, thank you, counsel. We've let you go way over. So at this time I'm going to say thank you to both of you for your arguments. This is a very interesting case and the matter is submitted at this time.
judges: Paez, Rawlinson, Antoon